68307. INTERNATIONAL INDEMNITY COMPANY v. BAKCO ACCEPTANCE, INC.
68308. BAKCO ACCEPTANCE, INC. v. ATLANTA AMERICAN INSURANCE AGENCY, INC. et al.
(322 SE2d 78)

SOGNIER, Judge.

Bakco Acceptance, Inc. d/b/a Perry and Company (Perry), an insurance premium finance company, sued Alexander Underwriters General Agency, Inc. (Alexander), International Indemnity Company (International), Atlanta American Insurance Agency, Inc. (Atlanta American), and certain individual agents of Atlanta American to recover unearned insurance premiums pursuant to former OCGA § 33-22-14 (a) (amended by Ga. L. 1984, p. 1345, § 3), and under the common law theory of money had and received. Atlanta American was a local or "producing" insurance agency which approached Alexander, a

general insurance agency, to place coverage for certain insureds. Alexander did so by ordering policies for these insureds with International, an insurance company. Perry financed the insurance premiums for the insureds.

The premium financing was set up under an arrangement between Perry and the local agency, Atlanta American. The insured made a down payment on the policy to Atlanta American and signed the premium finance agreement at the same time the application for insurance was signed. Atlanta American then wrote a draft to itself on Perry's account for the total amount financed and forwarded copies of the paperwork from the financing transaction to Perry.

The difficulties leading to the instant action came about when Atlanta American, after collecting money from the individual insureds for the policies and also collecting the financed premiums from Perry by means of drafts written on Perry's account, apparently absconded with the money, paying nothing to Alexander or International for the policies. Alexander, however, had advanced the premium payments to International to permit the issuance of the policies. Alexander did so by virtue of a credit arrangement it maintained with Atlanta American, called an "account current arrangement," under which Atlanta American was not required to make cash payments to Alexander for issuance of the insurance policies, but was extended credit by Alexander which billed Atlanta American monthly for all coverages placed.

During 1977, the insurance policies in question were cancelled. As a result of the cancellations, International (the insurer) returned the unearned premiums to Alexander (the agency). Alexander did not return any portion of the unearned premiums to Perry (the premium finance company), taking the position that since Alexander had never been paid any premiums by Atlanta American or Perry, there were no unearned premiums for Alexander to return and Alexander was therefore simply recouping its own funds after the cancellations.

After a nonjury trial, a verdict was returned in favor of Perry against International on the issue of liability under former OCGA § 33-22-14 (a) and judgment entered against International for the amount of the unearned premiums for the policies in question. Although apparently intended, the trial court did not enter judgment in favor of Alexander as to Perry's claim under former OCGA § 33-22-14 (a). Judgment was entered in favor of International and Alexander on the issue of liability for money had and received. International appeals. Perry cross-appeals.

1. Appellant contends that the trial court erred by holding that Perry's action to recover the unearned insurance premiums under former OCGA § 33-22-14 (a) was not barred by Perry's failure to notify International of the existence of the premium finance agreements on

the policies in question within 30 days of the signing of the agreements, pursuant to former OCGA § 33-22-12 (amended by Ga. L. 1984, p. 1345, § 1). The version of OCGA § 33-22-12 in effect at all times relevant to the instant case provided: "Any premium finance company which enters into a premium finance agreement under this chapter shall notify the insurer whose premiums are being financed of the existence of the agreement within a reasonable period of time not to exceed 30 days after the date the agreement is signed." The uncontested evidence shows that with regard to the individual insureds in question, Perry did not send notification to International within 30 days of the signing of the premium finance agreements although it did notify International of the premium financing agreements before International undertook the processing of the returns of the unearned premiums. Perry explained its failure to meet the 30-day limit by presenting evidence to show that a notice of premium financing was of no use to International unless the notice contained the insurance policy number and that Perry initially was not provided the policy number by the agency until after the 30-day period had expired. We note that the amended version of OCGA § 33-22-12 deletes any reference to a specific time period during which notification shall be given. See Ga. L. 1984, p. 1345, § 1.

"In all interpretations of acts of the legislature, it is the duty of the courts to look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy. [Cits.]" *Tomlinson v. Sadler*, 99 Ga. App. 482, 484 (2) (109 SE2d 84) (1959). The purpose of OCGA § 33-22-12 is to ensure the proper return of any unearned premiums due in the event of the cancellation of a financed insurance policy. By providing a method by which the insurer may be informed to whom the unearned premiums are to be returned — the insured or the premium finance company — the return of the premiums to the wrong party may thus be avoided. Accordingly, the premium finance company is made responsible for notifying the insurer of the existence of any premium financing agreement between itself and the insured.

The Insurance Premium Finance Act, OCGA § 33-22-1 et seq. sets forth no express requirement that the 30-day notification period be met as a prerequisite to the premium insurance company's entitlement to return of unearned premiums under OCGA § 33-22-14, and this court will not here create such a requirement. Were the premium finance company to fail to give the insurer any notice of the financing agreements, we would anticipate that this would afford the insurer a defense to an action by the premium finance company for return of unearned premiums. (See amended OCGA § 33-22-12; Ga. L. 1984, p. 1345, § 1.) However, the mere failure to provide notification within the 30-day period will not bar the premium finance company from

recovery of unearned premiums where there has been notification to the insurer prior to the time the insurer processes the return of the unearned premiums.

To construe former OCGA § 33-22-12 as appellants urge would result in the forfeiture of unearned premiums by premium finance companies whenever notification occurred more than 30 days after financing agreements were signed. Forfeitures are not favored, and we will not read into a statute a forfeiture that was not clearly expressed. *Moore v. Beneficial Fin. Co.*, 158 Ga. App. 535, 537 (281 SE2d 293) (1981); *Balkcom v. Heptinstall*, 152 Ga. App. 539 (263 SE2d 275) (1979). Further, " '[i]t is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature.' [Cits.]" *Barton v. Atkinson*, 228 Ga. 733, 739 (187 SE2d 835) (1972).

The trial court did not err in holding that Perry's late notice did not bar its statutory claim for return of unearned premiums where the evidence showed that such notice was received before the premiums were returned.

2. Appellant contends that the trial court erred by holding that there existed any unearned premiums which could be returned to Perry by appellant, pointing out that the trial court had found that no premiums financed or advanced by Perry were ever received by International. Appellant also contends that the trial court erred by holding that the misappropriation of any premiums advanced by Perry to Atlanta American was due to anything but Perry's own negligence. In this regard, the trial court, in holding that International was directly responsible for the return of the unearned premiums to Perry under former OCGA § 33-22-14 (a), also noted that the misappropriation of the premiums occurred because of the account current arrangement Alexander maintained with Atlanta American.

Former OCGA § 33-22-14 (a) provided in pertinent part: "Whenever a financed insurance contract is canceled, the insurer, . . . shall return whatever unearned premiums are due under the insurance contract to the premium finance company, either directly or via the agent, agency, or broker placing the insurance . . .; provided, however, if the insurer elects to return such unearned premiums to the premium finance company for the account of the insured or insureds, via the agent, agency, or broker placing the insurance, the insurer shall be directly responsible to the premium finance company for any and all unearned premiums due to the premium finance company under the contract which are not properly returned to the premium finance company; . . . ." While it is without question that the statute authorizes the recovery of unearned premiums due to the insurance premium finance company upon the *cancellation of a financed insur-*

ance policy, *Perry & Co. v. Knight Ins. Underwriters*, 149 Ga. App. 128, 129, 130 (253 SE2d 808) (1979), it is not clear whether the legislature intended to authorize such a recovery where, as in the instant case, the premiums paid by the premium finance company were never actually paid over to the insurer.

Where a law is capable of two constructions, the construction which conforms with the common law should be adopted. *Candler v. Smith*, 50 Ga. App. 667, 673 (5a)-674 (179 SE 395) (1934). See also *Mason v. Service Loan &c. Co.*, 128 Ga. App. 828, 832 (198 SE2d 391) (1973). While OCGA § 33-22-14 (a) is *not* a codification of a remedy existing at common law, *Knight*, supra at 130, the recovery it authorizes closely parallels the recovery permitted under the common law theory of money had and received. "[T]he theory of money had and received [is] a legal remedy involving the equitable principle that one ought not in equity and good conscience retain money where he would be enriched unjustly at the expense of another." *C. & S. Nat. Bank v. Youngblood*, 135 Ga. App. 638, 639 (219 SE2d 172) (1975). Thus, recovery is authorized against one who holds the money of another which he ought in equity and good conscience to refund. *Dell v. Kugel*, 99 Ga. App. 551, 559 (5) (109 SE2d 532) (1959). See *James Talcott, Inc. v. Roy D. Warren Commercial, Inc.*, 120 Ga. App. 544, 545 (1) (171 SE2d 907) (1969). While the money International received for premium payments (such money having been advanced by Alexander to permit the issuance of the policies) might, under one construction of OCGA § 33-22-14 (a), arguably be due Perry upon cancellation of the policies, nevertheless, when the facts of the instant case are considered in light of the common law, there is no basis upon which equity and good conscience would require that International return money to Perry when International never received nor held any money which was funded by Perry. At the heart of the theory of recovery for money had and received is the principle of unjust enrichment. *Youngblood*, supra. Having never received any money belonging to Perry, International has not been unjustly enriched by Perry. Thus, giving the statute the construction which is consistent with the common law, *Warren v. Walton*, 231 Ga. 495, 501 (202 SE2d 405) (1973); *Mason v. Service Loan &c. Co.*, 128 Ga. App. 828, 832 (198 SE2d 391) (1973); *Candler*, supra, as well as favoring the statutory construction which is the more equitable and just, *Ford Motor Co. v. Abercrombie*, 207 Ga. 464, 468 (62 SE2d 209) (1950); *Jenkins v. State*, 93 Ga. App. 360, 365-366 (92 SE2d 43) (1956), we hold that Perry is not entitled, under these particular facts and circumstances, to recover from International under former OCGA § 33-22-14 (a).

Finally, we agree with appellant that it was Perry's policy of allowing Atlanta American to write drafts on Perry's account and not Alexander's account current system that made possible and perhaps

"facilitated" Atlanta American's misappropriation of Perry's funds. Until Alexander received a notice of premium financing from Perry, there was no reason for Alexander to know of the financing arrangements under which Perry had made the premium payments to Atlanta American. Under these circumstances, there was no negligence on Alexander's part in extending credit to Atlanta American under the account current arrangement.

The trial court erred in entering judgment in favor of Perry and against International on Perry's statutory claim. Thus, the judgment in favor of Perry must be reversed.

3. Based on our reversal of the trial court's judgment in favor of Perry and against International in Division 2, it is unnecessary for us to consider appellant's remaining enumerations.

4. On cross-appeal, Perry contends that the trial court erred by granting judgment in favor of Alexander on Perry's statutory claim on the basis that Alexander is not "the insurer" directly responsible under OCGA § 33-22-14 (a) for return of unearned premiums due to the premium finance company. Perry argues that Alexander's performance of certain functions incidental to the issuance of insurance policies transformed Alexander into an "insurer." We do not agree.

First, the allegations of Perry's complaint, which are solemn admissions in judicio, affirmatively show that Alexander is a duly licensed general insurance agency. *Claxton v. Claxton*, 214 Ga. 715, 721 (3) (107 SE2d 320) (1959); *Davis v. Calhoun*, 128 Ga. App. 104, 107 (2) (195 SE2d 759) (1973). Next, while there was evidence to show that Alexander performs many functions on behalf of insurance companies, including collecting premiums, typing policies, and adjusting claims, nevertheless, all policies prepared by Alexander are issued in the name of a licensed insurance company and not in the name of Alexander. Alexander is not licensed as an insurance company but operates under a local agent's license. Therefore, the trial court did not err in holding that Alexander was not liable to Perry under OCGA § 33-22-12.

In view of the above, judgment should now be entered in favor of Alexander on this issue.

5. Perry also contends on cross-appeal that the trial court erred by entering judgment in favor of International and Alexander on Perry's claim for money had and received. For reasons discussed in Division 2 of this opinion, which apply to Alexander as well as to International insofar as the theory of money had and received is concerned, Perry's contention is without merit.

*Judgment affirmed in Case No. 68308 and reversed in Case No. 68307. McMurray, C. J., and Deen, P. J., concur.*

DECIDED SEPTEMBER 6, 1984.

*James B. Gurley*, for appellant.
*David E. Krischer*, for appellee.